CAMPBELL v. BERRYMAN et al.

In re BERRYMAN.

(District Court, N. D. Georgia, E. D. March 21, 1919.)

No. 33.

FRAUDULENT CONVEYANCES ⊜295(1)—EVIDENCE.

Circumstances, though suspicious, *held* insufficient to justify setting aside conveyance as fraudulent.

In Equity. Suit by G. L. Campbell, trustee, against Sim Berryman and another. Bill dismissed.

Dorough & Adams, of Royston, Ga., and Erwin, Rucker & Erwin, of Athens, Ga., for trustee.

Stephen C. Upson, of Athens, Ga., for defendants.

NEWMAN, District Judge. This case has been before the court heretofore on exceptions to the report of the special master, and an opinion was filed by me on January 6, 1919 (256 Fed. 402), in which it was held that the special master had erred, and directed that the case be re-referred to him for further consideration.

Recently, while in Athens, counsel for both plaintiff and defendants appeared before me and asked that I hear the whole case on the merits, as the special master felt himself disqualified. An order was made to that effect, and argument was had on the merits of the case before me. The question is whether the transfers from Sim Berryman to Mrs. Cheek, his mother-in-law, are fraudulent and void.

As the opinion above referred to, heretofore filed in this case, shows, the principal witnesses offered by the plaintiff on the hearing before the master were Sim Berryman, Mrs. Cheek, Alex S. Johnson, and Linton Johnson, and there were other witnesses whose testimony was not so material as that of those named. The special master, in his report, which, as stated, I have heretofore considered and passed upon, on questions of law in the case, says this:

"The plaintiff having introduced the defendants as his witnesses, though he might show they were mistaken, cannot take the position that they are unworthy of belief; hence, the evidence being insufficient to show the defendants are mistaken in their testimony as to the material points in the case, the plaintiff is bound by their evidence, and the result is necessarily a finding in favor of the defendants."

I differed with the special master about that, and in the opinion filed on January 6th, after citing authorities, held as follows:

"If the testimony of the witnesses itself showed such inconsistency as made it unworthy of belief, there was no necessity for showing either general bad character or lack of truthfulness. Their testimony, in such a case, if it shows clearly, as claimed here, that it is unworthy of belief, destroys itself. I think it is perfectly evident that if the master agreed with the contention for the plaintiff and consequently thought the testimony of Berryman and Mrs. Cheek not only failed to show that the transaction was bona fide, but showed the contrary, and that it was fraudulent and void, he had a right to so hold. As I understand it, he felt he could not hold that the transfers were

not bona fide when they swore they were, although he may have believed the testimony was ample, outside of their own statements as to the bona fides of the transaction, to show that this was not true."

The special master had stated in his report that:

"While there are a number of suspicious circumstances connected with this case, such as the evidence of Mrs. A. Berryman to the effect that Mrs. M. E. Cheek told her in 1916 that the land belonged to Sim Berryman (which Mrs. M. E. Cheek denied), and the statement of Sim Berryman on March 9, 1915, that the land was his (in an application for a loan), the failure to record the deed, the failure to change the tax returns from Sim Berryman to that of Mrs. M. E. Cheek, the statement of Sim Berryman at one time that he borrowed money from his mother-in-law over a period of 15 or 20 years prior to 1913, and his statement on another occasion that he borrowed money from her for a period of 8 years, yet, suspicious as these circumstances may be, they are susceptible of explanation, and, while these things may leave an exceedingly bad taste yet the positive sworn testimony of the grantor and the grantee and other witnesses in the case to the effect that, regardless of how much he borrowed each year, in 1913, on a settlement or an accounting, it was agreed that Sim Berryman was indebted to Mrs. M. E. Cheek in the sum of $8,000 or $9,000, and Berryman testifying that this amount was correct, and that he agreed to it, and all the witnesses testifying that the deed and the transfer of the bond for title were made in payment of the existing indebtedness, and were executed and delivered on the date they bear, circumstances adduced by the evidence which would tend to create an atmosphere of suspicion are not sufficient to overcome the positive sworn testimony of these witnesses."

The testimony to which the master alludes is now before me. At the time of the argument in this case at Athens I was impressed with the argument of counsel for the plaintiff, and was very doubtful what should be done in the case; but since I have been back in Atlanta I have gone through the testimony carefully, and after full consideration of the same I do not see that it justifies a finding for the plaintiff. I think the special master stated the case very well in the language I have quoted above. It is very suspicious, and, as he expresses it, "leaves a bad taste in the mouth," yet, in my opinion, it is not sufficient to justify setting aside the conveyances involved on the ground that they were made to hinder, delay, and defraud creditors, and that they are fraudulent in character. I have held the matter up, and taken time to think about it, and that is my conclusion. While the case looks gravely suspicious, it is not such as would authorize a finding in favor of the plaintiff.

The decree must be that the bill be dismissed.